UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LATYSHA SHORT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-261 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 31, 33, 37, 41, 47, 54 |
| | : | | |
| D.C. DEPARTMENT OF CORRECTIONS, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION; DENYING PLAINTIFF'S MOTION FOR RECUSAL; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE ELECTRONIC EVIDENCE; DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

Plaintiff Latysha Short ("Short" or "Plaintiff") is a former employee of the District of Columbia Office of Attorney General ("OAG") and the District of Columbia Department of Employment Services ("DOES"). Short, proceeding *pro se*, brings this action against the District of Columbia Department of Corrections ("DOC"), OAG, DOES, and the District of Columbia Department of Behavior Health ("DBH") (collectively, "Defendants"). Liberally construed, Short's complaint alleges that Defendants discriminated against her on the basis of sex and religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; discriminated against her on the basis of disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; violated her rights under the First, Second, and Fourth Amendments of the United States Constitution; and committed wire fraud and racketeering in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1962, and D.C. Code § 23-542. *See* Am. Compl. at 3–4, ECF. No. 21. Defendants move to dismiss all claims in

Short's amended complaint. Short, on the other hand, has filed two motions for preliminary injunction, a motion for recusal, a motion for leave to file electronic evidence, and a motion for judgment on the pleadings. For the reasons discussed below, Defendants' motion is granted and Short's motions are denied.

## BACKGROUND

### A. Factual Background

Short's amended complaint is difficult to follow and details factual allegations dating back to the 1990s. As best the Court can tell, however, the most relevant allegations relate to events occurring from the mid-2010s to the early 2020s—a time period during which Short worked at OAG and DOES.

Short began working at OAG in August of 2015. Am. Compl. at 12. She alleges that, while she was employed at OAG, OAG employees treated her derogatorily and in a "discriminatory" manner. *Id.* at 15. For example, Short claims that some employees treated her like a "dog" and asked her to "fetch" things for them. *See id.* Another employee referred to Short as a "squatter"—apparently a reference to the difficulties Short was having with her living situation around the same time period. *Id.*; *see also id.* at 17–18 (describing Short's housing issues). Short further alleges that OAG employees discussed the "sexual assaults" Short had suffered, "made fun of [her] salary," mocked her for failing to "provid[e] for [her] children," "joke[d] about the color of [her] nails," and "refer[ed] to [her as] a fungus and diseased." *Id.* at 15. Short felt "de-humanized" by these comments. *See id.* Separately, Short alleges that an OAG employee gave her a "shingles infection" and that other employees "touch[ed] [her]" whenever they pleased and without her permission. *Id.*; *see also id.* at 20 (alleging that employees "were able to touch [her] as if [she] was a remote-control car and not a person").

Short, who is HIV-positive, *id.* at 9, also alleges that OAG employees "lied" about being aware of her "medical status," *id.* at 12. All told, Short claims that these actions detrimentally impacted her "quality of life." *Id.* at 15.

Short left OAG in August of 2021. *Id.* at 12. She alleges that, prior to leaving, she participated in an exit interview in which an OAG employee asked her why she was leaving. *Id.* at 21. Short explained that, although OAG "was a great place to work," there were "limited opportunities for non-attorneys." *Id.* Short alleges that her explanation offended her interviewer, who then threatened to "reclassify [Short's] position to a 14." *Id.* The complaint does not meaningfully explain what that means, or the consequences it would entail.

Upon leaving OAG, Short began working at DOES. *Id.* at 7. She alleges that, shortly after beginning at DOES, a supervisor informed her that they planned to "rob[]" her, violate the privacy of her "medical records," "destr[oy]" her property, and "torture" her on account of her HIV diagnosis. *See id.* Despite these threats, Short apparently worked at DOES for over a year. *See id.* at 12, 46. At some point during that period, Short asked for permission to "work a modified work week," but it seems her request was denied. *See id.* at 9. Short had other issues at the workplace as well. For instance, employees complained that Short was regularly walking around the office and "talking on the phone." *Id.* at 10. And she alleges that DOES subjected her to a "discriminatory policy." *Id.* at 28.

On November 1, 2022, DOES placed Short on paid administrative leave "pending an investigation." *Id.* at 10, 12. The record does not reveal—and Short apparently does not know—the details of the alleged investigation. *See id.* at 12.

On December 17, Short filed a charge of discrimination with the Equal Opportunity Commission ("EEOC"). *Id.* at 28. Her EEOC complaint alleged that, while at DOES, she had

been "discriminated against on the basis of [her] disability" and that she had been "retaliated against" for "complain[ing] about a discriminatory policy." *Id.* The EEOC dismissed her charge, finding that "the facts alleged . . . fail to state a claim under any laws enforced by EEOC." *Id.* at 27. Short voluntarily resigned from her position at DOES in February of 2023. *See id.* at 44.

### B. Procedural Background

On January 30, 2023, Short filed a complaint in federal court, alleging claims under the First, Fourth, and Fifth Amendments to the Constitution. *See* Compl. at 3, ECF 1. On March 14, she filed an amended complaint. *See* Am. Compl. Short's amended complaint purports to allege claims under the First, Second, and Fourth Amendments to the Constitution; 18 U.S.C. § 1343; 18 U.S.C. §§ 1961–68; and D.C. Code § 23-542. *Id.* at 3. She also contends that she was discriminated against on the basis of sex, religion, and disability. *Id.* at 4.

After filing her amended complaint, Short filed two motions for preliminary injunction. *See* Pl.'s Mot. Prelim. Inj. ("Pl.'s Apr. Mot."), ECF No. 31; Pl.'s Mot. Prelim. Inj. ("Pl.'s May Mot."), ECF No. 33. The motions were docketed on April 28 and May 17, 2023, respectively. It is unclear whether Defendants were ever served with these motions. *See* Defs.' Notice at 1–2, ECF No. 55.

On May 24, Defendants moved to dismiss the amended complaint. *See* Defs.' Mem. P. & A. Supp. Defs.' Mot. Dismiss Compl. ("Defs.' Mot. Dismiss"), ECF No. 37-1. In their motion to dismiss, Defendants explained that the arguments advanced therein were also made in opposition to Short's motions for preliminary injunction. *See id.* at 1 n.1. Short filed multiple oppositions to Defendants' motion. *See* Pl.'s Mot. Opp'n Defs.' Mot. Dismiss & Pl.'s Request for Recusal ("Pl.'s First Opp'n"), ECF No. 40; Pl.'s Mot. Opp'n Defs.' Mot. Furtherance Dismissal ("Pl.'s

been "discriminated against on the basis of [her] disability" and that she had been "retaliated against" for "complain[ing] about a discriminatory policy." *Id.* The EEOC dismissed her charge, finding that "the facts alleged . . . fail to state a claim under any laws enforced by EEOC." *Id.* at 27. Short voluntarily resigned from her position at DOES in February of 2023. *See id.* at 44.

### B. Procedural Background

On January 30, 2023, Short filed a complaint in federal court, alleging claims under the First, Fourth, and Fifth Amendments to the Constitution. *See* Compl. at 3, ECF 1. On March 14, she filed an amended complaint. *See* Am. Compl. Short's amended complaint purports to allege claims under the First, Second, and Fourth Amendments to the Constitution; 18 U.S.C. § 1343; 18 U.S.C. §§ 1961–68; and D.C. Code § 23-542. *Id.* at 3. She also contends that she was discriminated against on the basis of sex, religion, and disability. *Id.* at 4.

After filing her amended complaint, Short filed two motions for preliminary injunction. *See* Pl.'s Mot. Prelim. Inj. ("Pl.'s Apr. Mot."), ECF No. 31; Pl.'s Mot. Prelim. Inj. ("Pl.'s May Mot."), ECF No. 33. The motions were docketed on April 28 and May 17, 2023, respectively. It is unclear whether Defendants were ever served with these motions. *See* Defs.' Notice at 1–2, ECF No. 55.

On May 24, Defendants moved to dismiss the amended complaint. *See* Defs.' Mem. P. & A. Supp. Defs.' Mot. Dismiss Compl. ("Defs.' Mot. Dismiss"), ECF No. 37-1. In their motion to dismiss, Defendants explained that the arguments advanced therein were also made in opposition to Short's motions for preliminary injunction. *See id.* at 1 n.1. Short filed multiple oppositions to Defendants' motion. *See* Pl.'s Mot. Opp'n Defs.' Mot. Dismiss & Pl.'s Request for Recusal ("Pl.'s First Opp'n"), ECF No. 40; Pl.'s Mot. Opp'n Defs.' Mot. Furtherance Dismissal ("Pl.'s

Second Opp'n"), ECF No. 46. Defendants' motion is fully briefed and ripe for review. *See* Defs.' Reply Further Supp. Mot. Dismiss Compl. ("Defs.' Mot. Dismiss Reply"), ECF No. 43; Pl.'s Reply Mot. Dismiss Opp'n, ECF No. 49.

On June 26, Short filed a motion for recusal. *See* Pl.'s First Opp'n; *see also* Pl.'s Mot. for Recusal, ECF No. 41. Defendants briefly responded to Short's motion for recusal in their reply in support of their motion to dismiss. *See* Defs.' Mot. Dismiss Reply at 7–8.

On July 29, Short filed a motion to submit electronic evidence. *See* Pl.'s Mot. Submit Electronic Evidence, ECF No. 47. Defendants filed a response arguing that the submission of such evidence is "premature" in light of the fact that Defendants had filed a motion to dismiss, and the parties had not yet begun discovery. *See* Notice of Defs.' Position Pl.'s Mot. Submit Electronic Evidence, ECF No. 48.

Finally, on November 13, Short filed a motion for judgment on the pleadings. *See* Pl.'s Mot. J. Pleadings, ECF No. 54. Defendants filed an opposition two weeks later. *See* Defs.' Opp'n Pl.'s Mot. J. Pleadings, ECF No. 56.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555. However, a court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

"In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Mindful that a *pro se* litigant's complaint should be "construed liberally and . . . held to 'less stringent standards than formal pleadings drafted by lawyers,'" *Lemon v. Kramer*, 270 F. Supp. 3d 125, 133 (D.D.C. 2017) (quoting *Erickson*, 551 U.S. at 94), a court will, when necessary, "examine other pleadings to understand the nature and basis of" a plaintiff's *pro se* claims, *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002). Nevertheless, a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). "When the plaintiff alleges the filing of an administrative charge, that charge may be deemed incorporated into the complaint and the

court can consider it on a motion to dismiss." *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 304 (D.D.C. 2015); *see also Koch v. Walter*, 935 F. Supp. 2d 164, 171 (D.D.C. 2013).

## ANALYSIS

### A. Defendants' Motion to Dismiss

Short's amended complaint claims that Defendants violated Title VII, the ADA, various other federal and D.C. statutes, and the First, Second, and Fourth Amendments to the U.S. Constitution. For the reasons discussed below, her claims are dismissed.[1]

#### 1. Title VII

Short's amended complaint does not explicitly cite Title VII as a basis for imputing liability to Defendants. *See* Am. Compl. at 3. But Short does allege that she suffered discrimination on the basis of sex and religion. *See id.* at 4. The Court will liberally construe Short's amended complaint as purporting to state claims of sex- and religious-based discrimination under Title VII, which "broadly prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin." *Niskey v. Kelly*, 859 F.3d 1, 5 (D.C. Cir.

---

[1] As a preliminary matter, Defendants correctly observe that the four named Defendants are *non sui juris*, meaning they cannot be sued separate from the District of Columbia. *See Whitehead v. D.C. Child Support Servs. Div.*, 892 F. Supp. 2d 315, 319 (D.D.C. 2012) ("[I]t is well-settled that a department or agency of the District of Columbia cannot sue or be sued in its own name in the absence of a statutory provision to that effect."); *see also Carter-El v. D.C. Dep't of Corrs.*, 893 F. Supp. 2d 243, 247 (D.D.C. 2012) (finding that "the Department of Corrections is not an entity capable of being sued separate from the District of Columbia"); *Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54 (D.D.C. 2009) (same for OAG); *Perez v. D.C. Dep't of Emp. Servs.*, 305 F. Supp. 3d 51, 56 (D.D.C. 2018) (same for DOES); *Bynum v. District of Columbia*, 424 F. Supp. 3d 122, 128 (D.D.C. 2020) (same for DBH). When a plaintiff brings a claim against a *non sui juris* entity, the court may substitute the proper defendant, *Sampson v. D.C. Dep't of Corrs.*, 20 F. Supp. 3d 282, 285 (D.D.C. 2014), but the court may decline to do so if substitution would be futile, *Cartel-El*, 893 F. Supp. 2d at 247–48. Here, substituting the District of Columbia as the defendant would be futile because Short fails to state a plausible claim for relief.

2017); *see* 42 U.S.C. § 2000e-2. But even liberally construed, Short's amended complaint fails to state a Title VII claim arising either from her employment at OAG or DOES.

Before filing a lawsuit alleging violations of Title VII, "a plaintiff must exhaust her administrative remedies." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019).[2] This means that a plaintiff must "'fil[e] an administrative charge with the EEOC and allow[] the agency time to act on the charge' before commencing litigation." *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). The ensuing litigation is then limited in scope "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 227 (D.D.C. 2012) (quoting *Park*, 71 F.3d at 907). "For a charge to be regarded as 'reasonably related' to a filed charge it must at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Haynes*, 924 F.3d at 526–27 (cleaned up) (quoting *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)). This ensures that the charge of discrimination "contain[s] 'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it" before an employee files a federal lawsuit. *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (quoting *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011)). The D.C. Circuit has instructed that "the administrative charge requirement should not be construed to place a heavy technical burden" on plaintiffs, *see Park*, 71 F.3d at 907, and that EEOC complaints should be liberally construed, *Crawford*, 867 F.3d at 108. All the same, "[a]

---

[2] Failure to exhaust "is a non-jurisdictional affirmative defense." *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 227 (D.D.C. 2012); *see Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011). As such, the defendant "bears the burden of proving by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies." *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 11 (D.D.C. 2011); *see Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907.

Here, the record supports Short's allegation that she filed a charge of discrimination with the EEOC in December of 2022. *See* Am. Compl. at 28. Short's EEOC complaint—which Short attaches to her amended complaint—lists Short's employer as DOES. *See id.* It explains that Short began working at DOES in August of 2021, and that she was "still employed" by DOES. *Id.* As the basis for Short's complaint, she explained that she "believe[d] [she] was treated differently due to [her] disability" and that there was a "discriminatory policy" in place. *Id.* She further alleged that she had contacted her "supervisor, HR, and union to protest [the] discriminatory policy" but that "no action was taken to resolve [her] complaint." *Id.* Shortly thereafter, Short "was subjected to multiple disciplinary actions." *Id.* She stated that she "believe[d] [DOES] [was] retaliating against [her]" for protesting the policy. *Id.* And she further explained that, on November 1, 2022, she "was placed on administrative leave pending an investigation." *Id.* In sum, she alleged that she "was discriminated against on the basis of [her] disability and retaliated against for engaging in protected activity." *Id.*

No matter how it is construed, Short's EEOC complaint may not be deemed to have put either OAG or DOES "on notice" that Short was alleging that she had been discriminated against on the basis of sex or religion. *See Crawford*, 867 F.3d at 109 ("[T]he central question is whether the employee's complaint contained 'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it." (quoting *Artis*, 630 F.3d at 1034)). As to the former, Short's complaint does not even *mention* OAG; indeed, the complaint describes allegations of events that occurred while Short was employed solely by DOES. And even though Short's EEOC charge at least mentions DOES and relates to her employment there, there is

nothing in Short's explanation of her allegations that hints at a claim of sex- or religious-based discrimination. Accordingly, to the extent Short's amended complaint purports to state discrimination claims arising under Title VII, those claims are dismissed.

### 2. ADA

Defendants also contend that Short has failed to state a claim for discrimination or retaliation under the ADA. The Court agrees.

#### a. OAG

To the extent Short alleges ADA violations stemming from her employment at OAG, she has failed to exhaust such claims. "To maintain a cause of action under the ADA a plaintiff must first exhaust administrative remedies by filing a claim with the EEOC and then obtain a Notice of Right to Sue from the agency." *Dahlman v. Am. Ass'n of Retired Persons (AARP)*, 791 F. Supp. 2d 68, 74 (D.D.C. 2011); *see also Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it."). As in the context of Title VII, "[t]he administrative exhaustion requirement serves the dual purpose of notice to the employer and an opportunity to settle the dispute." *Dahlman*, 791 F. Supp. 2d at 75.

Here, Short does not allege—and the record contains nothing to indicate—that she ever filed an EEOC complaint for ADA violations based on her employment at OAG. As described in the preceding section, the only EEOC complaint in the record describes alleged ADA violations Short suffered while employed at DOES. *See* Am. Compl. at 28. Accordingly, Short has failed to exhaust any alleged ADA violations arising from her employment at OAG. *See, e.g.*, *Congress v. District of Columbia*, 277 F. Supp. 3d 82, 90 (D.D.C. 2017).

*b. DOES*

Construed liberally, Short's amended complaint alleges that DOES discriminated against her on the basis of her disability and, after Short complained of the alleged discrimination, retaliated against her for complaining. *See* Am. Compl. at 28. But Short has not pleaded facts from which it possible to infer either discrimination or retaliation.

First, Short fails to plausibly allege that Defendants discriminated against her on the basis of disability. Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability . . . [in the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018). In order to state a claim of discrimination under the ADA, a plaintiff must plausibly allege that "(i) [she] suffered an adverse employment action (ii) because of [her] disability." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020) (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)). Short's amended complaint fails at step one: she does not allege facts from which it is possible to infer that she suffered an adverse employment action.

Until recently, the D.C. Circuit had held that a plaintiff could not demonstrate an adverse employment action unless the plaintiff could show that she had suffered an "objectively tangible harm." *See Keith v. U.S. Gov't Accountability Off.*, No. 21-cv-2010, 2023 WL 6276635, at *4 (D.D.C. Sept. 26, 2023). In *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), the en banc court dispensed with that requirement. *See Keith*, 2023 WL 6276635, at *4 (discussing *Chambers*). Now, a plaintiff need only plead facts sufficient to show that her

11

"employer has discriminated against [her] with respect to [her] 'terms, conditions, or privileges of employment.'"[3] *Chambers*, 35 F.4th at 874.

Even under this relaxed requirement, Short has failed to allege facts showing that DOES "discriminated against [her] with respect to [her] 'terms, conditions, or privileges of employment.'" *See id.* As best the Court can tell, Short complains that DOES enacted a "discriminatory policy."[4] *See* Am. Compl. at 28. She says that DOES "trapped [her] in a policy that consisted of HIV 2." *Id.* at 7. She also claims to have "opposed" this policy. *Id.* at 8. At no point does Short explain the details of the "policy" DOES supposedly enacted. And perhaps more to the point, her amended complaint never links the "policy" to a term, condition, or privilege of her employment. As such, Short has failed to plead facts sufficient to show that she suffered an adverse employment action. Her ADA discrimination claim must therefore be dismissed.

Short's ADA retaliation claim fares no better. The ADA protects employees from retaliation for opposing discriminatory employment practices aimed at those with disabilities. *See* 42 U.S.C. § 12203(a). To establish a *prima facie* case of retaliation, an employee must establish that: "(1) she made a charge or opposed a practice made unlawful by the ADA, (2) the employer took a materially adverse action against her, and (3) '"there existed a causal link between the adverse action and the protected activity."'" *Walker v. Children's Nat'l Med. Ctr.*, 236 F. Supp. 3d 136, 143–44 (D.D.C. 2017) (quoting *Smith v. District of Columbia*, 430 F.3d

---

[3] Although *Chambers* specifically addressed allegations of discrimination under Title VII, courts in this district have held that the Circuit's holding applies with equal force to the "indistinguishable" antidiscrimination provision in the ADA. *See Keith*, 2023 WL 6276635, at *5 (quoting *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010)).

[4] Her complaint separately alleges that the "policy has enslaved [her] for thirty-four years," Am. Compl. at 9, which renders it far from clear how DOES could have enacted the policy.

450, 455 (D.C. Cir. 2005)).  A plaintiff need not plead a *prima facie* case to survive a motion to dismiss.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case . . . is an evidentiary standard, not a pleading requirement."); *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015) (applying *Swierkiewicz* in the retaliation context).  "But she must plead facts sufficient to nudge her claims 'across the line from conceivable to plausible.'"  *Arthur v. D.C. Hous. Auth.*, No. 18-cv-2037, 2020 WL 7059552, at *5 (D.D.C. Dec. 2, 2020) (quoting *Iqbal*, 556 U.S. at 680)).  To that end, courts may use the *prima facie* "elements as a guide in [assessing] the plausibility of a plaintiff's claim for relief."  *See id.*

  Here, Short alleges that, in June of 2022, she complained to her supervisor, human resources, and her union representative that she had been "treated differently due to [her] disability" and the previously-mentioned "discriminatory policy."  *See* Am. Compl. at 28.  She claims that "no action was taken to resolve [her] complaint," and, instead, she was "subjected to multiple disciplinary actions" shortly thereafter.  *Id.*  Short's complaint does not reveal any further specifics regarding these alleged "disciplinary actions," nor does it describe any other purportedly adverse actions committed by DOES following her June 2022 complaint.  Thus, even assuming that Short's complaints to her supervisor and others constituted protected activity under the ADA, Short has still failed to plausibly allege that DOES took a materially adverse action against her on account of that activity.  Her unsupported allegations of "disciplinary actions" are far too conclusory to infer that they constituted materially adverse actions.

  The one possible exception to the conclusion just reached concerns Short's allegation that, in November of 2022, DOES placed her on "administrative leave with pay" "pending an investigation."  *See id.* at 10, 28.  This specific allegation does not resemble Short's conclusory claims of "disciplinary actions."  Perhaps acknowledging as much, Defendants argue that,

13

nonetheless, an employer's decision to place an employee on "*paid* leave, without more, does not count as an adverse action." Defs.' Mot. Dismiss at 7.

Under the ADA, "[a]n adverse action for a retaliation claim is one that could well dissuade a reasonable person from making or supporting a charge of discrimination." *Pressley v. Mgmt. Support Tech., Inc.*, No. 22-cv-2262, 2023 WL 5206107, at *11 (D.D.C. Aug. 14, 2023) (cleaned up); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Adverse employment actions include 'job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 17 (D.D.C. 2000) (quoting 42 U.S.C. § 12112(a)). "[M]inor or trivial actions that make an employee unhappy are not sufficient to qualify as retaliation under the ADA." *Id.* (quoting *Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir. 1999)).

To be sure, two other courts in this district have held that an employee's placement on paid administrative leave pending an investigation does not constitute materially adverse action. *See Hornsby v. Watt*, 217 F. Supp. 3d 58, 66–67 (D.D.C. 2016); *Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016). Those holdings accorded with decisions reached by courts outside this circuit. *See, e.g.*, *Joseph v. Leavitt*, 465 F.3d 87, 90–93 (2d Cir. 2006) (collecting cases); *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015). The D.C. Circuit, however, has expressly left open the question of whether "being placed on administrative leave could constitute the type of adverse action that would support a retaliation claim." *Hornsby v. Watt*, No. 17-5001, 2017 WL 11687516, at *1 (D.C. Cir. Nov. 14, 2017); *see also Wesley v. Georgetown Univ.*, No. 18-cv-1539, 2018 WL 5777396, at *6 (D.D.C. Nov. 2, 2018). That being so, the Court declines to dismiss Short's complaint on this basis.

The Court instead concludes that, even assuming that Short's placement on paid administrative leave pending an investigation *could* constitute a materially adverse employment action, Short does not plausibly allege that DOES placed her on such leave because of her protected activity.  To state a *prima facie* case for retaliation under the ADA, a plaintiff must allege that "there is a causal connection between the adverse action and the protected activity."[5] *Pressley*, 2023 WL 5206107, at *11 (quoting *Brown v. Trinity Washington Univ.*, No. 22-cv-1612, 2023 WL 2571729, at *5 (D.D.C. Mar. 20, 2023)).  One way in which a plaintiff can plead facts sufficient to give rise to an inference of causation is to show that her "employer had knowledge of [her] protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cooper v. District of Columbia*, 279 F. Supp. 3d 156, 163 (D.D.C. 2017) (quoting *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)).  Conversely, though "not necessarily fatal," a large temporal gap between the protected activity and the adverse action undermines a causal inference, especially in the absence of other factors suggesting causation. *See Greer*, 113 F. Supp. 3d at 311.

Here, five months elapsed between Short's complaint to her supervisor and her placement on administrative leave.  Courts have explained that gaps of this length are generally too long to give rise to a causal inference. *See, e.g.*, *Furey v. Mnuchin*, 334 F. Supp. 3d 148, 167 (D.D.C. 2018) (finding five months "too long to give rise to any inference of causation"); *Walker v. Johnson*, 501 F. Supp. 2d 156, 174 (D.D.C. 2007) (same).  Moreover, Short does not allege any other facts from which retaliatory animus can be inferred.  To the contrary, her complaint

---

[5] In this Circuit, it remains an unsettled question as to whether this means a plaintiff must plead that her protected activity was a "but-for cause" of the alleged adverse action or whether she need only show that it was a "motivating factor." *See Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-cv-01092, 2023 WL 2455678, at *5 (D.D.C. Mar. 10, 2023).

suggests that she was placed on administrative leave for factors that had nothing to do with her protected activity: specifically, the fact that she was a disruptive presence in the office.  *See* Am. Compl. at 10.  Accordingly, the Court finds that Short has not stated a plausible claim for retaliation under the ADA.

### 3. Plaintiff's Constitutional and Various Statutory Claims

Short's amended complaint alleges that Defendants violated her First, Second, and Fourth Amendment rights.  *See* Am. Compl. at 3.  However, the body of her complaint does not allege any facts from which it can be inferred that Defendants violated any of these constitutional provisions.  Even though a *pro se* litigant's complaint must be "construed liberally and . . . held to 'less stringent standards than formal pleadings drafted by lawyers,'" *Lemon*, 270 F. Supp. 3d at 133 (quoting *Erickson*, 551 U.S. at 94), a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton*, 567 F.3d at 681–82 (quoting *Iqbal*, 556 U.S. at 679).  Short's amended complaint fails to pass that test to the extent it purports to plead that Defendants violated her constitutional rights.

For the same reason, Short fails to state plausible claims that Defendants committed wire fraud, *see* 18 U.S.C. § 1343, or racketeering, *see id.* § 1962; *see also* D.C. Code § 23-542.  Despite the length of Short's amended complaint, the narrative described therein does not contain any specific factual allegations from which it possible to infer that Defendants violated these statutes.

In sum, even construed liberally, Short's amended complaint fails to "state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Her amended complaint is, therefore, dismissed.[6]

### B. Plaintiff's Motions for Preliminary Injunction

Short filed two motions—one in April of 2023 and the other in May—seeking the entry of a preliminary injunction. *See* Pl.'s Apr. Mot.; Pl.'s May Mot. A preliminary injunction is an "extraordinary" remedy that "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail on a motion for preliminary injunction, the movant bears the burden of showing that: (1) "[s]he is likely to succeed on the merits"; (2) "[s]he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [her] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because Short has not adequately stated a valid claim for relief, she also has not established any likelihood of success on the merits, and her motions fail. *See Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 8 (D.D.C. 2021) ("Plaintiffs can only establish a likelihood of success on the merits of their claims if those claims survive the motion to dismiss . . . ." (cleaned up)).

---

[6] Because the Court dismisses Short's amended complaint in its entirety, Short's motion for leave to file electronic evidence, *see* Pl.'s Mot. Submit Electronic Evidence, is denied as moot. Plaintiff's motion for judgment on the pleadings, *see* Pl.'s Mot. J. Pleadings, is also denied. Finally, the Court denies Short's motion for recusal, which seeks to disqualify OAG from defending this case. *See* Pl.'s First Opp'n at 24. The body of Short's motion does not make any argument as to why OAG should be disqualified.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 37) is **GRANTED**; Plaintiff's motions for preliminary injunction (ECF No. 31, ECF No. 33) are **DENIED**; Plaintiff's motion for recusal (ECF No. 41) is **DENIED**; Plaintiff's motion to submit electronic evidence (ECF No. 47) is **DENIED**; and Plaintiff's motion for judgment on the pleadings (ECF No. 54) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 20, 2024                                                                                         RUDOLPH CONTRERAS
                                                                                                                           United States District Judge